**Ann P. GRINSTEAD, both Individually and as Administrator with the Will Annexed of the Estate of M. Wayde Grinstead, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 18122.**

United States Court of Appeals, Seventh Circuit.

July 29, 1971.

William J. Bauer, U. S. Atty., Chicago, Ill., Johnnie M. Walters, Asst. Atty. Gen., John A. Townsend, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant; Thomas A. Foran, U. S. Atty., Lawrence J. Cohen, Asst. U. S. Atty., of counsel.

George W. Overton, Chicago, Ill., for plaintiff-appellee; Overton, Marks & Schwartz, Chicago, Ill., of counsel.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and REYNOLDS, Chief District Judge.[*]

REYNOLDS, Chief District Judge.

This is an appeal from a judgment entered in accordance with a jury verdict granting the plaintiff an income tax refund of $14,006.31 plus interest. The Government has appealed to this court contending that the district court erroneously denied its motion for a judgment notwithstanding the verdict and, alternatively, for a new trial because of alleged error in the charge to the jury. We affirm the decision below.

This is a widow-gift case. Mr. Grinstead, the deceased husband of Mrs. Grinstead, plaintiff-appellee, was a vice president of Clinton E. Frank, Inc. (hereinafter "company"). Shortly after his death, the company transferred to Mrs. Grinstead a company automobile which Mr. Grinstead had used and $25,-000 in cash. Mrs. Grinstead and the estate of her husband, in filing a joint income tax return for 1962, treated the transfer of the $25,000 and the car as gifts to Mrs. Grinstead and accordingly excluded them from the joint gross income. § 102(a) Internal Revenue Code of 1954. Upon an audit of the return, the Internal Revenue Service disagreed, and after adding $25,000 plus the value of the car to the adjusted gross income

---

[*] The Honorable John W. Reynolds, Chief Judge of the U. S. District Court for the Eastern District of Wisconsin, is sitting by designation.

made a deficiency assessment. After paying the deficiency assessment, Mrs. Grinstead then filed for a refund. Further facts, as necessary, will be set out below.

■ When a business upon the death of one of its employees transfers assets to the widow principally "from a [feeling of] 'detached and disinterested generosity' * * * 'out of affection, respect, admiration, charity or like impulses,'" Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 285, 80 S. Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960), then as concerns the widow, that transfer will be considered a gift for income tax purposes. Should the transfer stem from any other predominate reason, then it shall be considered income to the widow. Thus, should the dominant purpose in making a payment to the widow be to "express gratitude for services rendered by her husband without regard to any feeling for, or the needs of, his widow" the transfer is income to the widow. Fritzel v. United States, 339 F.2d 995, 997 (7th Cir. 1965). Likewise, should the transfer stem primarily from a desire to gain a benefit for the business, e. g., "payments to the widows of deceased executive * * * made for the purpose of encouraging living executives to continue in their employment," Simpson v. United States, 261 F.2d 497, 500 (7th Cir. 1958), then accordingly such a transfer cannot be considered a gift. Within this general framework each case in this area must be treated individually, and strict rules and presumptions cannot be relied upon as dispositive in themselves. Commissioner of Internal Revenue v. Duberstein, *supra.*

In the instant case, the issue at trial and the question for the jury was what was the "basic" or "dominant" reason of the company in transferring assets to the widow. *Duberstein, supra,* at 286, 80 S.Ct. 1190. The jury found that the company basically desired to make a "gift" of $25,000 and an automobile to the widow. The question then before this court is whether reasonable men viewing all the evidence, together with all reasonable inferences to be drawn therefrom, could have reached this conclusion. *Id.* at 291, 80 S.Ct. 1190; Hannigan v. Sears, Roebuck and Co., 410 F. 2d 285 (7th Cir. 1969).

Evidence at trial brought out to show a self-serving motive on the part of the company for the instant transfer tended to be ambiguous. In the context of this case, that motive, if it existed at all, could only be that the transfer to the taxpayer upon the death of her husband was meant to demonstrate to the officers of the company that the company "takes care of its own." Faced with the initial death of a top officer, the company embarked on an informal "death-benefit plan" to encourage living executives to continue their employment. While the evidence suggests that subsequent to the transfer at issue such a plan may have been informally adopted, reasonable men could have concluded that at the time of the transfer to the taxpayer, no such policy had yet been formulated. The officers who testified indicated that there had been some talk, and that certain officers had "hoped" at the time of the transfer decision that they would be similarly taken care of; but the difference between "hoping" and "establishing" and the inconclusiveness of the testimony generally on this point leaves room for differing conclusions.

Each of the company officers who testified indicated that the service of the deceased husband to the company was a factor in deciding to pay over $25,000 to his widow. Of course, in every case of this nature prior service must play a role, for the widow comes to the attention of the business only through her deceased husband's relationship with the firm. In the instant case it is beyond dispute that the husband and his estate were fully compensated for his services in any legal sense of the word. If we assume that the jury inferred that a "death-benefit plan" did not prompt the transfer to the taxpayer, the question then that remains is whether the jury might reasonably have found that the moral duty to do something in recogni-

tion of the decedent's services, which was undeniably felt by the company, was of lesser import in the decision to "give" than any feelings prompted by the widow and her family.

Appellee cites the corporate resolution authorizing the contested transfer as sound evidence from which the jury might have found that the company was primarily prompted by a feeling for, and the needs of, the widow:

> *"Resolution authorizing payment of $25,000 in cash and transfer of an automobile to Ann P. Grinstead, widow of M. Wayde Grinstead.*

"WHEREAS, Mr. M. Wayde Grinstead, an officer and an employee of the company, died on November 8, 1962, at the age of fifty-five after eight years of loyal and continuous service to the company;

"WHEREAS, the ability of Mrs. Grinstead to satisfy her financial needs has been seriously impaired by the economic loss resulting from her husband's death;

"WHEREAS, because of the respect, admiration and affection with which Mr. Grinstead was regarded by all persons connected with the Company, and out of sympathy to his widow, it is the desire of the Company to help alleviate the financial loss to Mrs. Grinstead resulting from her husband's death;

"RESOLVED, that, for the reasons stated in the recital clauses of this resolution, the proper officers of the Company be, and they hereby are, authorized and directed to pay to, or on behalf of, Mrs. Grinstead the amount of $25,000 and to transfer to Mrs. Grinstead title to the automobile which was used by her husband in the Company's business."

Initially the Government cites uncontested testimony to the effect that this resolution was drafted by the company's law firm and that the company officer who initially contacted the law firm informed them only as to what assets were to be given and to whom they were to go. From this it is argued that the only inference possible is "that the attorneys *sua sponte* included the recital clauses" as to the reasons for the transferring of funds and that therefore the resolution has no bearing as to the company's motives. Two factors suggest that other inferences are possible: first, no evidence was produced showing that the officer who initially contacted the attorneys was the only officer to talk to the attorneys about the matter; second, each of the three company directors signed the resolution, and prior to this signing the resolution was approved by the company officers.

Appellant further cites, in an effort to support that part of the resolution which speaks to Mr. Grinstead's service to the company and to impeach that part which addresses itself to Mrs. Grinstead's needs, testimony by each of the company officers to the effect that no investigation of Mrs. Grinstead's needs was made and that the transfer was made "in Grinstead's memory and for what he had done for our firm" (quoting Mr. Frank, a director, majority shareholder, and top officer). Taxpayer on the other hand sought at trial to impeach the company officers and further pointed out that only one of the three members of the board of directors testified at trial.

More importantly, evidence was brought out at trial from which a knowledge of Mrs. Grinstead's needs and/or a feeling or concern for Mrs. Grinstead alluded to in the resolution could have been found. It was shown that Mr. Grinstead had borrowed money from the company and that other than Mr. Frank, he was the only other top officer to do so. It was also stated that the taxpayer had been having some difficulty in drawing out funds from the bank because the estate was unsettled; and, of course, it was clear that with the death of Mr. Grinstead, the $45,000 a year income he had brought into the family

treasury would cease. Further testimony at trial recounted that during the illness of the decedent just prior to his death, Mr. Frank and the other top officers each visited the decedent a number of times in the hospital. Mr. Frank also went to the funeral, and after joining the bereaved family at their home afterwards, he was prompted to draw the sons aside and ask them to later come to his office where subsequently they talked over what could be done for their mother. It was also brought out that another officer called the taxpayer to assure her that something would be done for her.

■ Viewing the evidence as a whole, we find ourselves (to paraphrase Judge Parsons) firmly "convinced that, had we been the jury, we would have ruled against Mrs. Grinstead" but being reminded that "appellate review of determinations in this field must be quite restricted," *Duberstein, supra,* at 290, 80 S.Ct. at 1199, we find that we cannot say that the evidence adduced at trial so preponderated against Mrs. Grinstead that reasonable men could not have found for her. Assuming that no "death-benefit plan" was found and given the context of a small business facing not only the death of a well liked and highly regarded officer but the first death among its top management as well, a jury, in light of the resolution and testimony which in part tended to support it, as reasonable people might have inferred that natural sympathy and concern for Mrs. Grinstead were the primary emotions leading to the transfer of both the funds and the car.

The Government also argues that the jury instructions were improper. While conceding that there was no misstatement of law, it contends that the form of some of the individual instructions was such as to mislead the jury. Reading the charge as a whole, we find that no harmful error was committed. Accordingly, the judgment is affirmed.