UNITED STATES of America, Appellee,

v.

Andrew TSANAS, Appellant.

No. 341, Docket 77–1348.

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 1977.

Decided Jan. 13, 1978.

Certiorari Denied April 24, 1978. See 98 S.Ct. 1647.

Donald E. Nawi, Brooklyn, N. Y. (Joseph J. Lombardo, Brooklyn, N. Y., of counsel), for appellant.

Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., Eastern District of New York, and Alvin A. Schall and Steven Kimelman, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.

FRIENDLY, Circuit Judge:

A grand jury in the District Court for the Eastern District of New York filed a five count indictment charging Andrew Tsanas and his wife, Pauline, with evading income taxes in violation of 26 U.S.C. § 7201[1] for the five years 1971–1975. Pauline pleaded guilty to one count of willfully filing a false tax return in violation of 26 U.S.C. § 7206(1)[2] shortly after the trial commenced. The jury acquitted Tsanas on Count I relating to 1971, convicted him on the lesser included offense of § 7206(1) on Count II relating to 1972, and convicted him under § 7201 on Counts III, IV and V relating to 1973, 1974 and 1975. The court sentenced Tsanas to concurrent three year terms of imprisonment and a cumulative $15,000 fine on Counts II and III and to three years probation on Counts IV and V following his release from prison. From these convictions Tsanas appeals.

Tsanas was a subordinate employee of J. C. Penney Co., responsible for awarding construction and maintenance contracts, whose salary ranged from $14,393 in 1971 to $21,744 in 1975. The evidence, which it is unnecessary to review in detail, revealed an incredible tale of Tsanas' exacting some $1.4 million in kickbacks from Howard Lazar, president of a privately owned general construction company, and other contractors eager to be employed in Penney's reconstruction of its corporate headquarters. Tsanas received large sums in cash.[3] In addition, Lazar supplied Tsanas with bank checks in amounts ranging from $2,000 to over $5,000 on leading New York City retail stores, and paid for the elaborate renovation and sumptuous furnishing of a new apartment rented by Tsanas, at a total cost of some $550,000. Tsanas' new life style included substantial payments by him to his family and to three women friends. It did not reflect any corresponding recognition of liability to the United States for federal income tax; Tsanas' returns of income reported none of the amounts here described and were limited to his modest salary. The defense proffered was that the enormous sums paid by business firms to or for the account of Tsanas in return for his aid in obtaining contracts with Penney constituted gifts to him.

We should hardly have thought Tsanas' appeal from his convictions to merit an opinion except that appellate counsel has raised a significant question concerning the way in which a judge should instruct a jury with respect to a lesser included offense in a case where an instruction on that subject is appropriate. Surprisingly this question, which is bound to recur, has not been squarely faced by the Supreme Court, by us or, so far as our research has disclosed, by any other circuit.

The indictment here was under 26 U.S.C. § 7201, see note 1 *supra*, "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency," *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418

---

1. This reads:

    § 7201. *Attempt to evade or defeat tax.* Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

2. This reads:

    § 7206. *Fraud and false statements.* Any person who—
    (1) *Declaration under penalties of perjury.* Willfully makes and subscribes any return, statement, or other document, which con-

tains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter

\* \* \* \* \* \*

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

3. These were:

| | |
|---|---|
| 1971 | $ 35,000 |
| 1972 | 140,000 |
| 1973 | 240,000 |
| 1974 | 69,400 |
| 1975 | 473,900 |

(1943). The lesser included offense here under discussion is 26 U.S.C. § 7206(1), see note 2 *supra*. As applied to this case where the criminal act charged was the filing of false income tax returns, the only difference between the two offenses is that § 7201 requires proof of an intention "to evade or defeat" a tax whereas § 7206(1) penalizes the filing of a false return even though the falsity would not produce tax consequences. The case clearly met one branch of the test enunciated in *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), for determining when a defendant is entitled to a lesser included offense charge, namely, that on the facts of the case the lesser offense must be included within the greater; if Tsanas willfully attempted to evade or defeat taxes by filing false income tax returns in violation of § 7201, he would necessarily have violated § 7206(1). It may be more doubtful whether the case qualified under the second branch of the *Sansone* test, namely, that on the facts the lesser offense must not be "completely encompassed by the greater." There must be a "disputed issue of fact concerning the existence of an element required for conviction" under § 7201 but not required under § 7206(1). *Id.* at 353, 85 S.Ct. at 1011. As we said in *United States v. Markis*, 352 F.2d 860, 867 (2 Cir. 1965), *vacated on other grounds*, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967):

> The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all "in the teeth of both law and facts," *Horning v. District of Columbia*, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920); there must be a rational basis for its doing so.

The defense that all the payments were gifts would not qualify under this test. If believed, Tsanas would be innocent of both offenses since gifts are excludable from gross income, IRC § 102, and if not believed, he would be guilty of both. Cf. Comment, Jury Instructions on Lesser Included Offenses, 57 Nw.U.L.Rev. 62, 66 (1962); *Sansone v. United States, supra,* 380 U.S. at 353, 85 S.Ct. at 1011 ("Given peti-

tioner's material misstatement which resulted in a tax deficiency, if, as the jury obviously found, petitioner's act was willful . . . he was guilty of violating both [sections] . . . . If his action was not willful, he was guilty of violating neither."); *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956) (". . . here the method of evasion charged was the filing of a false return, and it is apparent that the facts necessary to prove that petitioner 'willfully' attempted to evade taxes by filing a false return . . . were identical with those required to prove that he delivered a false return with 'intent' to evade taxes . . ."). However, the indictment charged an attempt "to evade and defeat a large part of the income tax due and owing," see *United States v. Norris*, 205 F.2d 828, 829 (2 Cir. 1957) ("the gist of the offense is the willful attempt to evade any substantial part of the tax due"); *United States v. Nunan*, 236 F.2d 576 (2 Cir. 1956), *cert. denied*, 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957) ("the showing by the government must warrant a finding that the amount of the tax evaded is substantial"), and it is arguable that a jury could rationally have found that, at least for some of the years, enough of the payments were gifts that this greater charge was not sustained beyond a reasonable doubt, as it evidently did with respect to 1971 and 1972, but that Tsanas' returns were nevertheless false. Cf. *United States v. Beasley*, 519 F.2d 233, 245 (5 Cir. 1975), *vacated on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976). As against this, § 7206(1) requires proof that the defendant does not believe the tax return to be true as to every "material" matter. See *Hoover v. United States*, 358 F.2d 87 (5 Cir.), *cert. denied*, 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59 (1966). Whether, given the facts of this case, it would be possible for a jury rationally to find that a "large part" of the tax was not owing but that Tsanas' tax returns were nonetheless "materially" false is highly uncertain. However, the Government did not object to the court's giving the lesser included of-

fense charge, and in light of our conclusions we need not determine whether a lesser included offense charge was justified.

After carefully explaining the nature of the two offenses, Chief Judge Mishler charged without objection:

> The law permits the jury to find the accused guilty of any lesser offense which is necessarily included in the crime charged in the indictment whenever such a course is consistent with the facts found by the jury from the evidence in the case, and with the law given and the instructions of the Court. If the jury should unanimously find the accused not guilty of the crime charged in the indictment, then the jury must proceed to determine the guilt or innocence of the accused as to the lesser offense which is necessarily included in the crime charged.

Appellant now contends that the latter sentence constituted plain error in requiring a unanimous verdict of not guilty of the greater offense before allowing the jury to move to the lesser; it should suffice, he argues, if the jury could not reach agreement on a conviction for the greater offense.

The instruction given has support in practice. The charge requested (but not given) in *Sansone* would have required the jury to "find" the absence of one element in the greater offense, see 380 U.S. at 346, 85 S.Ct. 1004, and while the proposed charge did not use the word "unanimously," that would seem to have been the effect. The instruction here given also followed the form approved in the then current edition of Devitt & Blackmar, *Federal Jury Practice and Instructions* § 17.11 (2d ed. 1970). It derives some support also from language in Judge Leventhal's opinion in *Fuller v. United States*, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1227–32 (1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), although for reasons stated in the margin [4] the case is not at all decisive on the point here at issue. Some courts, however, have used instructions similar to that preferred by Tsanas, although without addressing the pros and cons of the issue.[5]

We can readily agree with Judge Leventhal's statement, 132 U.S.App.D.C. at 294, 407 F.2d at 1228:

> The doctrine of lesser included offenses is not without difficulty in any area of the criminal law.

At first blush the entire doctrine, now embodied in F.R.Cr.P. 31(c), is a bit surprising. It could have been argued with some force that a defendant should be entitled to take

---

**4.** While the court said that the jury "does not even consider the issue of second degree murder unless it acquits as to first degree," 407 F.2d at 1230, and "[o]nly if the jury has a reasonable doubt as to guilt of the higher offense, may a jury performing its duty acquit of that charge, and only then may it turn to consideration of whether defendant is guilty of the lesser offense," an earlier passage had characterized the process as being that the jury would "move on to consideration of the lesser offense only if they have some reasonable doubt as to guilt of the greater offense." Id. at 1227. This language could be taken to be satisfied by a difference of opinion among the jurors and is apparently so read in the 1977 edition of Devitt & Blackmar, § 1805, p. 583. The *Fuller* court was not required to focus on what would be the proper charge since the issue was whether failure to give any instruction with respect to a lesser included offense charged in an indictment was "plain error . . . affecting substantial rights" under F.R.Cr.P. 52(b), no instruction having been sought. In a later opinion designed "to restate and hopefully to clarify the ruling in *Fuller*," Judge Leventhal did speak of the jury's duty to pass to the lesser offense only in the event of an "acquittal" on the greater, *United States v. Butler*, 147 U.S.App.D.C. 270, 455 F.2d 1338, 1340 (1971). However, this was a case where the defendant had requested the "only upon acquittal" charge and the milder form requested by Tsanas was not at issue. See also *O'Clair v. United States*, 470 F.2d 1199, 1204 (1 Cir. 1972), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973).

**5.** See *United States v. White*, 225 F.Supp. 514, 519 (D.D.C.1963), *vacated and remanded on other grounds*, 121 U.S.App.D.C. 287, 349 F.2d 965 (1965) ("The jurors were told that if they were not unanimously convinced" of guilt on the greater charge, they should move on to the lesser); *United States v. Fromme*, cited in Devitt & Blackmar, *supra*, § 18.05 at 583. See also *United States v. Dixon*, 507 F.2d 683 (8 Cir. 1974), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976) (affirming a conviction on a lesser charge after a deadlock on the greater).

the Government at its word, concentrate his trial preparation and tactics on the weakest part of the indictment and receive an acquittal if he engendered a reasonable doubt about it; if the Government wished to protect itself against failure to prove an element of the greater offense, it could have indicted for both. On the other side it could have been argued that the Government should be entitled to seek a conviction solely for the greater offense without the jury's having an option to convict only on the lesser.

Such arguments, however, have not prevailed. One reason is similar to that which argues for the liberal conception of joinder embodied in F.R.Cr.P. 8—the desirability, both for the prosecution and the defendant, of disposing of all charges of criminality from the same or related courses of conduct in a single trial, see *Ashe v. Swenson*, 397 U.S. 436, 454–57, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). Cf. *Petite v. United States*, 361 U.S. 529, 530, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960); *Bruton v. United States*, 391 U.S. 123, 131 n.6, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In addition, on the Government's side, a defendant guilty of a lesser included charge of which the indictment has given him sufficient notice should not go free because the Government has failed to convince every member of a jury of some element of the greater crime beyond a reasonable doubt. See *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). And on the defendant's side, there is a powerful fairness argument favoring the instruction. As the Supreme Court said in *Keeble, supra*, 412 U.S. at 212, 93 S.Ct. at 1997:

. . . it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every

element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.[6]

The rule, however, also has its dangers—to both sides. From the prosecution's standpoint the advantage that the jury will convict of something must be weighed against the disadvantage that it may make too little effort toward achieving unanimity on the greater offense and move too readily to the lesser one. The danger is partially but not wholly removed by the rule of *Sansone* permitting a lesser included offense charge only if there would be a rational basis for a jury's convicting on the lesser but not on the greater offense and by the power of the judge to impose a sentence for the lesser offense at the upper part of the permitted range. From the defendant's standpoint the balance is reversed; the advantage gained by giving the jury an option between a conviction on the greater charge and setting him free is counterbalanced by the danger that a juror who could on no account have been persuaded to convict on the greater and is not truly convinced beyond a reasonable doubt of all elements of the lesser offense may nevertheless convict on the latter. The supposedly unanimous jury that has convicted on the lesser charge may consist of one group convinced of guilt beyond a reasonable doubt on the greater offense, another group not so convinced on either, and a third group so convinced on

---

**6.** At one time the doctrine might have been thought essential to protect a defendant acquitted on the greater offense from a new prosecution on the lesser. However, two Supreme Court decisions of the last term now make it plain that the Double Jeopardy clause sufficiently performs that office. *Brown v. Ohio,*

432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). See also *United States ex rel. Rogers v. LaVallee*, 517 F.2d 1330 (2 Cir. 1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976).

the lesser but not on the greater offense—with the first two groups of jurors subordinating their real views to that of the third in order to avoid a mistrial. As in the case of the Government, the defendant receives some although not complete protection by the rule that the lesser included offense instruction may not be given when there is no rational basis for convicting on the lesser offense alone. See *United States v. Harary*, 457 F.2d 471, 479 (2 Cir. 1972) (prosecution is not entitled to submission of count charging lesser offense over defendant's objection when there is no rational basis for conviction on lesser rather than greater offense.) It is against this general background that we must weigh the merits of the two forms of instruction here at issue.

The instruction given here has the merit, from the Government's standpoint, of tending to avoid the danger that the jury will not adequately discharge its duties with respect to the greater offense, and instead will move too quickly to the lesser one. From the defendant's standpoint, it may prevent any conviction at all; a jury unable either to convict or acquit on the greater charge will not be able to reach a lesser charge on which it might have been able to agree.[7] But it entails disadvantages to both sides as well: By insisting on unanimity with respect to acquittal on the greater charge before the jury can move to the lesser, it may prevent the Government from obtaining a conviction on the lesser charge that would otherwise have been forthcoming and thus require the expense of a retrial. It also presents dangers to the defendant. If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would

leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge.

An instruction permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater likewise has advantages and disadvantages to both sides—the mirror images of those associated with the charge actually given here. It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid a mistrial, but at the risk of a conviction on the lesser charge which might not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser.

With the opposing considerations thus balanced, we cannot say that either form of instruction is wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice. If he does, the court should give the form of instruction which the defendant seasonably elects. It is his liberty that is at stake, and the worst that can happen to the Government under the less rigorous instruction is his readier conviction for a lesser rather than a greater crime. As was said in *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), albeit in a different context:

> It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

---

7. It might be thought to have the further advantage of producing a clear acquittal on the greater charge which would plainly forbid reprosecution on that charge after a successful appeal from the conviction on the lesser charge. But, here again, such a reprosecution apparently is barred by the double jeopardy clause regardless of the form of instruction. See *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *United States v. Barash*, 412 F.2d 26,

32 (2 Cir.), *cert. denied*, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); cf. *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (2 Cir. 1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). Contrast *United States ex rel. Jackson v. Follette*, 462 F.2d 1041 (2 Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 496 (1972) (premeditated murder and felony murder, both being murder in first degree, were the same, not a greater and a lesser included offense).

Here, however, Tsanas' trial counsel made no request for the form of instruction now advocated. Hence not only was there no "plain error affecting substantial rights," rather since the less rigorous form of instruction need be given only on the defendant's request, there was no error at all.

Tsanas makes a further argument on lesser included offenses. He contends that the court should also have charged a violation of the first sentence of 26 U.S.C. § 7207.[8] Just as § 7201 is the "capstone" of tax offenses, § 7207 lies at the bottom.

■ Clearly Tsanas was not entitled to have both § 7206(1) and § 7207 charged as lesser included offenses. Under the facts of this case any violation of § 7207 would have been the filing of a false tax return, the very offense defined in § 7206(1) and thus "completely encompassed" by it. *Sansone v. United States, supra,* 380 U.S. at 350, 85 S.Ct. 1004. To have charged both would only have "invite[d] the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Id.* at 350 n.6, 85 S.Ct. at 1009. Cf. *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) (holding that § 7207 should not be charged as a lesser included offense to § 7206(1) where the former is, on the facts, encompassed by the latter). We have been cited to no decision and know of no principle that would require the charging of the lesser rather than the greater of two lesser included offenses in such a situation. See *United States v. Coppola,* 300 F.Supp. 932, 934 (D.Conn.), *aff'd,* 425 F.2d 660 (2 Cir. 1969) ("The fact that in some instances the evi-

dence relied on . . . to establish a violation of the felony section might be identical with that relied upon to show a violation of the misdemeanor statute does not . . . require that the conduct be prosecuted as a misdemeanor rather than as a felony."); cf. *United States v. Ruggiero,* 472 F.2d 599, 606 (2 Cir. 1973) (". . . where criminal statutes overlap the government is entitled to choose among them provided it does not discriminate against any class of defendants."). Any such rule would aggravate the dangers in a practice that already has enough.

■ Tsanas' other points require little comment. We find no error in Chief Judge Mishler's instruction with respect to the claim that the payments constituted gifts.[9] The judge excused two jurors who in his interrogation of the jury admitted to having read newspaper accounts of Mrs. Tsanas' guilty plea, contrast *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), where jurors who had read the prejudicial article were not excused. The judge may inquire of the jury collectively whether it has read a prejudicial article and then, as here, ascertain individually and outside the presence of the other jurors the effect of the publicity upon the individual jurors who have in fact read the material in question. *Margoles v. United States,* 407 F.2d 727, 735 (7 Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969); *United States v. Lord,* 565 F.2d 831, 838–39 (2 Cir. November 15, 1977). In other words, there is no requirement that each juror must be examined individually to determine whether he has even read the material in question. But cf. *Mares v.*

---

8. This reads:

§ 7207. *Fraudulent returns, statements, or other documents.*

Any person who willfully delivers or discloses to the Secretary or his delegate any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both.

9. The principal claim is that it was error to use language derived from approving quotations from other opinions in *CIR v. Duberstein,* 363

U.S. 278, 285, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960), such as "detached and disinterested generosity" and "affection, respect, admiration, charity or like impulses," in the case of a corporation. Compare *Joshel v. CIR,* 296 F.2d 645, 647 (10 Cir. 1961); *United States v. Transamerica Corp.,* 392 F.2d 522, 524 (9 Cir. 1968). We find no merit in this. *Duberstein* itself involved an alleged gift by a corporation, 363 U.S. at 281, 80 S.Ct. 1190. See *Greentree v. United States,* 338 F.2d 946 (4 Cir. 1964); *Grinstead v. United States,* 447 F.2d 937 (7 Cir. 1971).

*United States*, 383 F.2d 805, 809 (10 Cir. 1967), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969) (reporting during trial of withdrawn guilty plea and excluded confession required voir dire of each juror out of presence of other jurors).

■ Tsanas' final complaint is that the court refused to subpoena the corporate income tax returns of the Lazar Company. The argument is that these might have disabused the jury of any impression created by the Government's interrogation of Lazar that the company deducted the payments to Tsanas as business expenses. However, Tsanas had all the books and records of the company available to him and the case is not one where its corporate tax returns would "directly" affect the resolution of his guilt, as required by the recently enacted 26 U.S.C. § 6103(h)(4)(B) or (C).

Tsanas received an eminently fair trial at which his guilt was established beyond any doubt. The convictions are affirmed.