STATE OF CONNECTICUT *v.* BERNARD SAWYER
(9728)

DALY, O'CONNELL, NORCOTT, FOTI, LANDAU, FREEDMAN and CRETELLA, Js.

Argued January 15—decision released September 8, 1992

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne Klatt,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). The defendant claims that § 53a-55 (a) (3) is unconstitutionally vague as applied,

and that the trial court's instructions to the jury were improper. We reverse the judgment of conviction.

The jury could reasonably have found the following facts. On February 17, 1989, the defendant was in his apartment when he was surprised by the arrival of his girl friend, Ernestine Watkins. Also at the apartment were the victim and Franklin Damon. After Watkins had hugged and kissed the victim, she asked him for a ride. The defendant followed them and got into the back seat of the victim's automobile. Watkins refused to get into the car and told the defendant, with whom she was angry, not to go with her, and that he should remain behind while she went to visit her uncle. The defendant then exited the car and the victim left with Watkins.

After waiting for more than an hour for Watkins to return, the defendant walked to a bar to look for her. At the bar, he observed someone hide a package near a dumpster. He retrieved the package and discovered a .357 magnum pistol that contained a live round in the chamber. He kept the gun and continued his search for Watkins. Upon learning that she had not visited her uncle, the defendant returned home. A short time later he observed the victim's car, with the victim in the driver's seat and Damon in the front passenger seat. He jumped into the back seat demanding to know where Watkins was. After the victim told him that she would return shortly, the defendant demanded that the victim drive him to where Watkins was. When the victim refused, the defendant put the gun to the back of the victim's neck, and pulled back the hammer. The victim again refused, stating that he had promised to give Damon a ride home. The victim bowed his head slightly and the gun discharged, sending a bullet through his left carotid artery and killing him.

Immediately after the gun discharged, the defendant said, "Oh my God, what have I done, I didn't mean

to do it," and ran from the scene. He turned himself in to the police the following day and handed over the weapon used in the crime.

The defendant's claim that the trial court improperly instructed the jury that it had to be unanimous in its verdict on a greater offense before it could consider a lesser offense is dispositive of this appeal.

The issue here is whether a trial court should instruct the jury either (1) that it must unanimously find the defendant not guilty of the greater offense before it may consider a lesser included offense (acquittal first instruction), or (2) that, if it is unable to agree unanimously that the defendant is guilty of the greater offense, it may then consider a lesser included offense (reasonable efforts instruction). The defendant requested a reasonable efforts instruction but the trial court gave an acquittal first instruction.

The state argues that this issue was decided in *State v. Stankowski,* 184 Conn. 121, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). We do not agree that *Stankowski* decided this issue. None of the issues raised in the *Stankowski* appeal involved the proper jury instruction for consideration of a lesser included offense.[1] The state, however, appears to interpret the Supreme Court's quotation of the jury charge at issue in *Stankowski* as "implicit approval of the charge."

If *Stankowski* implicitly approved the acquittal first instruction, there is nothing for this court to consider

_____

[1] The claims raised in *State* v. *Stankowski,* 184 Conn. 121, 439 A.2d 918 (1981), were that the trial court improperly (1) denied his motions for judgment of acquittal, (2) admitted statements made by him while he was in police custody, (3) excluded the testimony of a child witness, (4) gave the Chip Smith charge, (5) charged the petit jury on the element of intent, (6) charged the grand jury on the element of intent, and (7) denied his post-trial motion for a new trial based on juror misconduct.

and any further discussion is unwarranted. It is well established that it is not our function as an intermediate appellate court to overrule Supreme Court authority. *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 29, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985). We, however, do not agree with the state that *Stankowski* declares the law, even by implication, on this subject.

In *Stankowski,* the court merely quoted the jury charge at issue in toto in order to address the challenge to the Chip Smith charge. Appellate opinions serve as authority for only those issues actually decided by the court. *State* v. *Darwin,* 161 Conn. 413, 421, 288 A.2d 422 (1971). In *State* v. *DellaCamera,* 166 Conn. 557, 353 A.2d 750 (1974), our Supreme Court was faced with a similar situation involving implicit approval of General Statutes § 54-86b. In that case, the court enunciated, "that a case or a series of cases which merely mention or apply a statute *without questioning its validity* cannot serve as binding precedent on that issue." (Emphasis added.) Id., 560. Although *DellaCamera* involved the implicit approval of a statute, the reasoning behind the court's finding that that precedent had not been established is directly applicable to this case. Because our Supreme Court in *Stankowski* did not consider whether the jury charge was proper insofar as it may have touched on the procedure to be followed by the jury in reaching the lesser included offense, that issue remains one of first impression in this state.

A survey of the cases discloses that other jurisdictions are divided on the subject, some requiring the acquittal first instruction,[2] and others mandating the

---

[2] Among the decisions that have followed the acquittal first instruction in either its pure or hybrid forms are: *Whiteaker* v. *State,* 808 P.2d 270, 274 (Alaska App. 1991); *Dresnek* v. *State,* 697 P.2d 1059, 1064 (Alaska App. 1986); *State* v. *Hernandez,* 167 Ariz. 236, 240–41, 805 P.2d 1057 (1990); *State* v. *Staatz,* 159 Ariz. 411, 416–17, 768 P.2d 143 (1988); *State*

reasonable efforts instruction.[3] Good arguments exist for either instruction and we would be faced with a Scylla and Charybdis choice were it not for the existence of a third option created in *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978).

Following a thorough discussion of both instructions, the Second Circuit Court of Appeals articulated that "[w]ith the opposing considerations thus balanced, we cannot say that either form of instruction is wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice. If he does, the court should give the form of instruction which the defendant seasonably elects. It is his liberty that is at stake . . . ." Id. Further, other federal jurisdictions have adopted this optional approach.[4]

v. *Wussler,* 139 Ariz. 428, 429–30, 679 P.2d 74 (1984); *People* v. *Mickey,* 54 Cal. 3d 612, 672–73, 818 P.2d 84, 286 Cal. Rptr. 801 (1991); *People* v. *Nicolaus,* 54 Cal. 3d 551, 580, 817 P.2d 893, 286 Cal. Rptr. 628 (1991); *People* v. *Kurtzman,* 46 Cal. 3d 322, 324–25, 758 P.2d 572, 250 Cal. Rptr. 244 (1988); *Middlebrooks* v. *State,* 156 Ga. App. 319, 320, 274 S.E.2d 643 (1980); *Lamar* v. *State,* 243 Ga. 401, 403, 254 S.E.2d 353, appeal dismissed, 444 U.S. 803, 100 S. Ct. 23, 62 L. Ed. 2d 16 (1979); *State* v. *Van Dyken,* 242 Mont. 415, 791 P.2d 1350, cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 251 (1990); *People* v. *Boettcher,* 69 N.Y.2d 174, 181–84, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987); *State* v. *McNeal,* 95 Wis. 2d 63, 66–68, 288 N.W.2d 874 (1980); *Dillon* v. *State,* 137 Wis. 655, 667–68, 119 N.W. 352 (1909).

[3] Among the decisions that have followed the reasonable efforts instruction in either its pure or hybrid forms are: *People* v. *McGregor,* 635 P.2d 912, 914 (Colo. App. 1981); *State* v. *Yamashira,* 8 Hawaii App. 595, 817 P.2d 123 (1991); *State* v. *Ferriera,* 8 Hawaii App. 1, 791 P.2d 407 (1990); *State* v. *Korbel,* 231 Kan. 657, 661, 647 P.2d 1301 (1982); *People* v. *Handley,* 415 Mich. 356, 358–60, 329 N.W.2d 710 (1982); *State* v. *Thomas,* 401 Ohio St. 3d 213, 218–20, 533 N.E.2d 286 (1988), cert. denied, 493 U.S. 826, 110 S. Ct. 89, 107 L. Ed. 2d 54 (1989); *Tarwater* v. *Cupp,* 304 Or. 639, 645, 748 P.2d 125 (1988); *State* v. *Allen,* 301 Or. 35, 38–40, 717 P.2d 1178 (1986); *State* v. *Labanowski,* 117 Wash. 2d 405, 816 P.2d 26 (1991).

[4] Among the decisions from circuit courts that have adopted the optional approach are: *Wright* v. *United States,* 588 A.2d 260, 262 (D.C. App. 1991); *United States* v. *Jackson,* 726 F.2d 1466, 1469–70 (9th Cir. 1984); *Pharr* v. *Israel,* 629 F.2d 1278, 1282 (7th Cir. 1980); *Catches* v. *United States,* 582 F.2d 453, 459 (8th Cir. 1978).

This approach appeals to us because it allows the defendant to gamble everything on the greater charge, hoping for an acquittal or at least a hung jury, or it allows the defendant, at his option, to hedge his bet by gambling that the jury, as a result of a compromised verdict, may find him guilty of a lesser charge. Because it is the defendant's liberty that is involved, we agree with the court in *Tsanas* that he should be allowed to make the choice. If the defendant fails to make a choice, however, the court may then give whichever instruction it feels appropriate under the circumstances because neither is wrong as a matter of law. Id.

There are many advantages to the approach sanctioned in *Tsanas*. First, this approach may avoid many inherent problems of the acquittal first instruction. One such problem is the enhanced risk of a hung jury. If the jury is unable to reach a unanimous verdict on the greater offense without being allowed to consider the lesser included offenses, the court is forced to declare a mistrial. "Because the jury cannot discuss lesser included offenses until agreeing to acquit on the charged offense, jurors cannot rectify substantial disagreement by compromising on a lesser offense composed of elements not disputed by the defendant or by the jurors. These restraints on compromise discussions thus fail to ameliorate the hung jury problem." M. Craig, "Improving Jury Deliberations: A Reconsideration of Lesser Included Offense Instructions," 16 U. Mich. J.L. Ref. 561, 568 (1983). Thus, by giving the defendant the option to request either instruction, in those cases in which the reasonable efforts instruction is chosen, a hung jury is less likely to occur.

Second, the optional approach espoused by the court in *Tsanas* further removes the very real danger that "[i]f the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave

the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge." Id. Because the optional approach gives the defendant the choice of which instruction he or she prefers, the defendant is afforded the fullest possible protection and fairness. Such protection is both warranted and mandated by our system of jurisprudence which is founded on the interests of fair trials and just judgments. As stated in *Tsanas,* "[i]t is [the defendant's] liberty that is at stake, and the worst that can happen to the Government under the less rigorous instruction is his readier conviction for a lesser rather than a greater crime." Id. Furthermore, the optional approach safeguards the criminal defendant's valued right to have his trial completed by a particular tribunal. See *United States* v. *Jorn,* 400 U.S. 470, 486, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971); *State* v. *Van Sant,* 198 Conn. 369, 376, 503 A.2d 557 (1986).

Additionally, all of the reasons that favor resolution of criminal charges in a single prosecution lend further support for the optional approach. If the defendant elects the reasonable efforts instruction, exposure to retrials can be avoided, increasingly scarce judicial resources may be most effectively utilized, and the emotional trauma of compelling the defendant to live in a continued state of anxiety and insecurity is avoided. See *Green* v. *United States,* 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). The only disadvantage to the state is loss of the greater charge, not the whole conviction. This disadvantage, however, is greatly outweighed by the advantage that both the state and the defendant obtain by having the matter resolved by a jury expressly chosen to resolve the matter.

Although we favor the reasonable efforts instruction and would like to see its adoption in Connecticut, we

cannot conclude that it is mandated by law. Indeed, since neither the reasonable efforts nor acquittal first instructions are wrong as a matter of law, we believe the better reasoned approach is the *Tsanas* option which allows the defendant to choose the instruction to be given. This approach serves both fairness and justice. In the present case, the defendant has fulfilled the *Tsanas* requirement of requesting a particular instruction (i.e., reasonable efforts) and he should be given the benefit of the instruction he has elected. "In the interests of justice, we have the power to remand a case for further proceedings even in the absence of reversible error by the trial court." *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 717, 501 A.2d 377 (1985). This is an appropriate case for such a remand.

We disagree with the state's contention that because the defendant was not convicted of murder but of manslaughter in the first degree, he was not prejudiced by the acquittal first instruction, which deprived the jury of considering manslaughter in the second degree. Our case law provides that if a defendant is convicted of the greater offense, the failure to give proper instructions on lesser offenses constitutes reversible error. *State* v. *Hall,* 213 Conn. 579, 588–89, 569 A.2d 534 (1990); *State* v. *Monte,* 131 Conn. 134, 136–37, 38 A.2d 434 (1944). Giving instructions on the lesser offenses, however, is an empty gesture if the same instruction sets up a bar to the jury considering the lesser offense. The effect of the acquittal first instruction that the jury could not consider a lesser offense unless it unanimously agreed on an acquittal of the greater offense, does not comport with the rationale of *Monte.* "The jury is . . . a very practical means of securing justice. A verdict must in the end speak a conclusion to which each individual juryman gives his conscientious assent. It may not, however, represent the original views of some

members, but may be the result of an open-minded discussion and an honest weighing of the opinion of others, in the consciousness that one should not be too sure of a personal judgment in which others who have heard the same evidence and have an equal desire to arrive at the truth do not concur. . . . In the effort of a jury to reach a verdict with which each member can conscientiously agree, the situation presented where the alternative is between finding a defendant guilty as charged or not guilty may be quite different from one where, under the charge of the court, they have the further choice of finding him guilty of some lesser offense embraced within the information. From the standpoint of the actual process by which juries arrive at verdicts, a failure to submit to them the lesser offense as a permissible basis for their verdict may work a very serious harm to the defendant." (Citations omitted.) *State* v. *Monte,* supra.

The acquittal first instruction given in this case deprived the defendant of having the jury consider manslaughter in the second degree just as effectively as if the court had declined to instruct on that charge. Because the trial court required that the jury overcome a preliminary hurdle—a unanimous acquittal on manslaughter in the first degree before it could consider the lesser included offense of manslaughter in the second degree—it deprived the defendant of his right to have the jury consider this lesser included offense.

The dissenting opinions imply that the procedure for receiving a criminal jury verdict is uniform throughout the state. We do not agree; nor is it relevant to the issue before us. The proper jury instruction will be determined by the law and, if necessary, the procedure for receiving a jury verdict will be modified to conform to the law, not vice versa.

Because our disposition of the appeal on the lesser included offense instruction requires a retrial, we do

not reach the defendant's claim concerning the constitutionality of the manslaughter in the first degree statute. On remand the reasonable efforts jury instruction should be given if it is again requested by the defendant.

The judgment is reversed and the case is remanded for a new trial.

In this opinion DALY, NORCOTT and LANDAU, Js., concurred.

FREEDMAN, J., concurring. I agree with the result reached by the majority. I also agree with the majority that *State* v. *Stankowski,* 184 Conn. 121, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), did not decide the issue of whether the trial court must give the jury the acquittal first instruction and not the reasonable efforts instruction. I do not agree, however, that we are "faced with a Scylla and Charybdis choice" in deciding what I consider to be a question of first impression.

A careful reading of the majority opinion makes it patently clear that the majority prefers the reasonable efforts instruction. First, the opinion points out that such instruction "may avoid many inherent problems of the acquittal first instruction," including "the enhanced risk of a hung jury," the "very real danger" of dissenters throwing in the sponge rather than cause a mistrial, and the "exposure to retrials . . . ." It aptly points out that if the reasonable efforts instruction is elected "increasingly scarce judicial resources may be most effectively utilized, and the emotional trauma of compelling the defendant to live in a continued state of anxiety and insecurity is avoided." The only disadvantage to the state, the majority notes, is the "loss of the greater charge, not the whole conviction." This disadvantage, the majority declares, "is

greatly outweighed by the advantage that both the state and the defendant obtain by having the matter resolved by a jury expressly chosen to resolve the matter." It expressly states that the majority "favor the reasonable efforts instruction and would like to see its adoption in Connecticut . . . ."

Indeed, even the dissent by Judge Foti avers that the "reasonable efforts instruction serves the defendant's interest in resolving his case, it promotes society's interest in fair trials and a just result, and it causes less mistrials due to a deadlocked jury, which waste the scarce time and resources of the judicial system."

I, too, favor the reasonable efforts instruction and would like to see its adoption in Connecticut. Since there appears to be agreement by all but one member of this seven member panel that the reasonable efforts instruction is the preferable instruction, and since I believe that no appeals court of this state has yet to hold which instruction is the proper instruction, I would answer this question of first impression by holding that the proper instruction to be given in all matters in which there is one or more lesser included offenses is the reasonable efforts instruction.

I concur with the majority that in this case the conviction should be vacated and the case remanded for a new trial. I would hold, however, that at such new trial, the trial court should give the jury the reasonable efforts instruction.

FOTI, J., dissenting. I respectfully disagree with the majority opinion concerning the proper jury instruction of lesser included offenses. The majority recognizes that a reasonable efforts instruction requested by the defendant is not mandated by existing case law, but nevertheless adopts that requirement over the acquittal first instruction as given. I do not agree that this

new instruction should be mandated, nor should it be applied in this particular case since the defendant was not harmed.

I believe that the trial court properly instructed the jury that it had to be unanimous in its verdict on a greater offense before it could consider a lesser offense. The facts pertinent to this claim are as follows. The defendant requested the court to instruct the jury: "[I]f they find that the elements of murder have not been proven beyond a reasonable doubt, or if they are unable to agree unanimously that the elements of murder have been so proved, they may then consider whether the defendant is guilty of the lesser included offense of manslaughter in the first degree and/or manslaughter in the second degree." The court did not so charge.

After providing a full explanation of the essential elements of murder, the court instructed the jury as follows: "And if you find that the state has proven each of these elements beyond a reasonable doubt, your verdict would be guilty, as charged, of murder. If, however, you do not find that each of these elements have been proven beyond a reasonable doubt then, obviously, your verdict on the charge of murder would be not guilty. But, again, that does not end your participation in this particular case.

"Assume for the moment that you come to the conclusion that the state has proved the elements of murder and you render a verdict of guilty. Obviously, that would stop your deliberations and you would then report back that verdict. But, if during the course of your deliberations, you come to the conclusion that the state did not prove one or more of the elements that I've just given to you on the charge of murder then, obviously, your verdict would be not guilty of murder.

"Then you would go to what we consider in law lesser included offenses. Now, in this case I'm going to charge

you on two lesser included offenses. They are going to be manslaughter in the first degree and manslaughter in the second degree. So you get to this part of the case if you come to the conclusion that the state hasn't proved one or more of the elements of the charge of murder.''

Following the court's instructions as to the essential elements of manslaughter in the first and second degrees, the court explained: "So, then if you find that the state has proven the elements of manslaughter in the second degree, as I've given them to you beyond a reasonable doubt then, obviously, your verdict would be guilty. And again, if the state failed to prove any one or more of the elements of manslaughter in the second degree then your verdict would be not guilty.

"So, let's just recapitulate because, I know I've read a lot to you and you might be getting a little concerned about it.

"We start off with the charge of murder and go through that and then decide whether or not the state has proved all the necessary elements as I've given them to you of murder in the first degree. And if so, then, that would end your deliberations. You would come back in and find the defendant guilty as charged. If, however, you come to the conclusion that the state has not proved one or more of the elements of murder beyond a reasonable doubt then, obviously, your verdict would be not guilty to the charge of murder.

"Your next step would be then to consider the aspect of manslaughter in the first degree as I charge it to you and the elements I have given on that particular charge. If after your discussion you come to a conclusion that the state has proved all of the elements of manslaughter in the first degree then your verdict would be guilty to manslaughter in the first degree. But, if you go through and come to the conclusion that

the state has not proved one or more of the elements of manslaughter in the first degree, then you would come to the conclusion and say that the defendant is not guilty of manslaughter in the first degree. Then if you come to that conclusion then you would go through the elements that I have given to you on manslaughter in the second degree. And, again, if you come to the conclusion that the state has proved the elements of the charge beyond a reasonable doubt then your verdict would be guilty of manslaughter in the second degree. Then, obviously, after you deliberate and come to the conclusion that the state has not proved elements of manslaughter in the second degree then your verdict would be not guilty and that would end your deliberations.''

The defendant took an exception to the court's failure to give his requested charge. The court stated that it was going to recall the jury, and if there were any problems, exceptions could be again noted. The jury was then returned to the court and instructed in regard to accepting the verdict as follows: ''The foreperson should take the first seat. And the clerk will then ask the foreperson, have you reached a verdict and, obviously, the answer will be yes or no. So, then, what she will do is to read the information to you on the charge of murder. So, the foreperson will say—and she will ask you, is he guilty or not of the charge of murder as charged. And, obviously, it will either be guilty or not guilty. If you say guilty, that will end it and we will go through what we call a repetition and the clerk will say to each and everyone of you, is that your verdict, so say you all. And, audibly, you all have to answer.

''Now, if per chance on the first charge of murder the foreperson comes back and says not guilty, then the clerk will go through and read the charge of manslaughter in the first degree and we will go through the same thing with the foreperson, is the defendant

guilty or not guilty of the charge of manslaughter in the first degree. And depending on that, if it is guilty, then we will make a repetition and ask everybody, is that your verdict so say you all. And if the verdict on manslaughter in the first degree is not guilty, then the clerk will go through the charge of manslaughter in the second degree and to go through the same thing with the foreperson and depending on what the foreperson says, guilty or not guilty, and we will go through the same repetition. So, it's all done orally. That is the sequence that we will follow."

During the course of deliberations, the jurors sent out a note to which the court responded:

"The Court: I have received the following note. 'Please provide: 1. Elements of number one murder charge and second manslaughter first degree. 2. Franklin's account of the actual shooting. Signed [by the] foreperson . . . .'

"What we are going to do first is, we will have the testimony of Franklin played back. We will do that first."

Whereupon, testimony of Mr. Damon was played back.

"The Court: Okay. Now, the next question you've asked—I'm sort of reading it, literally. You asked me to give you back again the elements of the charges of murder and manslaughter in the first degree and that is just what I'm going to give you. I'm not going to read the complete charge. All I am going to give to you is the elements and if you want anything further then that, let me know." The court then instructed as requested. There were no exceptions taken.

The following day the jurors sent the court a note stating: "With no unanimous decision on the charge of murder or manslaughter in the first degree, but

unanimous as to guilty on one count or the other, please advise."

The following dialogue took place in the absence of the jury after the court read the jurors' note:

"With a discussion with counsel, what the court is going to say in interpreting the note, I will instruct the jury that before they go as to manslaughter in the first degree they must agree unanimously on the charge of murder in their deliberations. That, obviously, would either be guilty or not guilty and they could not go to manslaughter in the first degree until they unanimously came to the position of not guilty on the charge of murder.

"It is the court's position as far as the law in Connecticut at this particular time, that if they cannot reach a unanimous verdict on the charge of murder either of guilty or not guilty then we get to a question of mistrial and we don't put the charge of murder aside and go to the manslaughter in the first degree without a decision as to murder.

"Anybody got any comments?

"Mr. McWhirter [Defendant's Counsel]: Yes, Your Honor. At this time I would simply ask again that the defendant's request to charge, number two, which I think would instruct the jury contrary to what Your Honor just stated, be given to the jury. I'm sure that Your Honor has already indicated that that will not be done. I would ask it to be done to be consistent. Clearly, that is a request of charge that is crucial at this point in the trial. So, I would renew the request that defendant's request number two be given to the jury at this time.

"The Court: Miss Klatt.

"Ms. Klatt [State's Attorney]: And, again, Your Honor, I would object to the defendant's second request

to charge. I don't believe it is a law in the state of Connecticut at least at this juncture. And I have no exception to the court's proposed instructions to the jury at this point.

"The Court: Obviously, I think you and I agree, Mr. McWhirter, that the present case law in Connecticut says that I cannot do as you are requesting in your request to charge. So, I can only rely on the wisdom from above. And whether that is precise or imprecise at this particular time, we will all have to wait for another day. But, obviously, your exception is noted."

The court then instructed the jury as follows: "Well, I'm just going to make this brief statement to see if it helps you out. That in the sequence of events in your decision as to the charges that I gave to you the other day, of murder, manslaughter in the first degree or manslaughter in the second degree. The first thing that you must determine is on the charge of murder. Now, you have to come to a unanimous decision on that charge of either guilty or not guilty. And, obviously, if you found your verdict were guilty then you, obviously, wouldn't go to any lesser included offense.

"You'd have to have unanimous decision of not guilty on the charge of murder before you then started to consider the charge of manslaughter in the first degree and thereon. So, you've got to come to decision first of all, unanimously, one way or the other on the charge of murder before you at all consider the lesser included offense of manslaughter in the first degree. And, again, I am not referring to manslaughter in the second degree because that is not included in your note.

"So, if it helps you out at all, again, you have to come to a decision on the crime as charged, murder, before you go to the lesser included offense of manslaughter. It has got to be unanimous, either guilty or not guilty on the charge of murder before [you go on]. And, obvi-

ously, if it were guilty to murder you don't go to manslaughter in the first degree. So, in order to get to manslaughter in the first degree you must, unanimously, obviously, find the defendant not guilty of murder. And if you can't do that then send me a note and I'll see what else I can tell you."

The defendant noted his exception. Simply stated, the defendant's claim is that the trial court improperly gave the "acquittal first" instruction when the defendant had requested the "reasonable efforts" instruction. In other words, the jury was instructed not to consider the lesser included offenses until it had unanimously found the defendant not guilty of the greater offense of murder. The requested charge, on the other hand, would have allowed the jury to consider the lesser offenses if it was unable to agree on the murder charge. The defendant argues that the jury instruction given by the court allows a jury to deadlock, whereas the instruction requested by the defendant allows the jury to correlate its verdict with the elements that were proven, and resolve the matter by proceeding to a lesser included offense without a unanimous verdict on the greater offense.

The defendant correctly points out that many states have adopted the so called reasonable efforts instruction, as have several federal circuits including the Second Circuit Court of Appeals. The reasonable efforts instruction "permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater . . . has advantages and disadvantages to both sides . . . . It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid a mistrial, but at the risk of a conviction on the lesser charge which might

not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser." *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978). In considering the instruction with approval, the Second Circuit Court of Appeals held: "With the opposing considerations thus balanced, we cannot say that either form of instruction is wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice. If he does, the court should give the form of instruction which the defendant seasonably elects." Id.

I agree that the modern trend is to grant a defendant's request to allow a jury to consider lesser offenses absent acquittal of the greater offense, given the fact that the defendant's liberty may be at stake and that he has a compelling interest in concluding his confrontation with society. I recognize that the defendant's arguments are well stated: The reasonable efforts instruction serves the defendant's interest in resolving his case, it promotes society's interest in fair trials and a just result, and it causes less mistrials due to a deadlocked jury, which waste the scarce time and resources of the judicial system. We must first decide, however, whether Connecticut's law allows us to follow the modern trend and if so whether the defendant in this case was in any way prejudiced.

The requirement of a unanimous verdict is part of the constitutional safeguard of trial by jury. *State* v. *Peary,* 176 Conn. 170, 183, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979). Our Supreme Court, in affirming the trial court in *State* v. *Stankowski,* 184 Conn. 121, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), recognized the unanimity requirement even at the transitional point between a greater and lesser offense. The Supreme Court noted that the jury

"came back and asked the trial court whether they had 'to reach a unanimous decision on the first or more serious charge before considering the lesser charge?' After the trial court answered yes and explained its answer, it then gave the jury a charge on the role and responsibility of the jurors, commonly referred to as a 'Chip Smith' instruction." Id., 142–46. The court had before it the exact language of the trial court in answering that question which it quoted as follows: "The court stated: 'The last question which you sent out reads as follows: "Does the jury have to reach a unanimous decision on the first or more serious charge before considering the lesser charge?" The answer to the question is yes. You make a decision on the greater charge first and then you go on to the lesser charge, if you decide that the accused is not guilty of murder in the first degree on the first charge. Then and only then will you consider the lesser included charge.' " Id., 146 n.6. The defendant in *Stankowski* was convicted of the greater charge of murder, after receiving the Chip Smith instruction[1] and the jury never got to consider a lesser included offense.

This court will not reevaluate Supreme Court precedent. *State* v. *Wilson,* 17 Conn. App. 97, 98 n.1, 550 A.2d 21 (1988). Although an acquittal first instruction was not at issue in *Stankowski,* I assume that the Supreme Court, in directly quoting the trial court's jury charge, gave implicit approval to the instruction, and recognize that this implicit approval may not constitute binding precedent. Since our Supreme Court had before it the very language that we are dealing with, I must conclude that even though the issue itself was not before it, our Supreme Court, in failing to notice plain error, as it could have; Practice Book § 4185; recognized the acquittal first instruction as the proper instruction to be followed in our state. While our

---

[1] *State* v. *Smith,* 49 Conn. 376 (1881).

Supreme Court is not bound to consider a claim not distinctly raised at trial, and does not ordinarily do so, that court has on occasion considered a question not so raised, not by reason of the appellant's right to have it determined but because it was in the interest of public welfare or of justice to so do. *Persico* v. *Maher,* 191 Conn. 384, 403, 465 A.2d 308 (1983). Nonetheless, whether the implications of *Stankowski* should be examined in light of the modern trend of allowing the defendant to choose between an acquittal first or a reasonable efforts instruction is not for this court to decide.

Assuming arguendo that the language in *State* v. *Stankowski,* supra, is not sufficient to warrant the conclusion that the existing state of the law in Connecticut is the acquittal first instruction, the defendant was in no way prejudiced by such an instruction under the circumstances of this case.

The defendant is entitled to a warranted instruction on a lesser included offense, and refusal to so charge cannot be held harmless merely because the defendant was convicted of a greater offense. *State* v. *Hall,* 213 Conn. 579, 588, 569 A.2d 534 (1990); *State* v. *Monte,* 131 Conn. 134, 137, 38 A.2d 434 (1944). Therefore, when the jury has been denied the opportunity to consider all the possibilities of lesser included crimes, conviction of the greater offense does not render the failure to give the lesser included offense academic or harmless. In this case, however, the trial court properly instructed the jury on the crime of murder and the lesser included offenses of manslaughter in the first and second degrees as requested by the defendant. In following the court's instructions, the jury obviously did not unanimously agree that the state had proven beyond a reasonable doubt the essential elements of the crime of murder, so they proceeded to unanimously agree that the defendant was not guilty of that crime. In following the court's instruction, the jury then delib-

erated whether the state had proven beyond a reasonable doubt the essential elements of the crime of manslaughter in the first degree. The verdict indicates there was unanimity on this point, so the jury never had to go further. The jury never had to unanimously consider the lesser offense of manslaughter in the second degree because it found the defendant guilty of manslaughter in the first degree. Unlike *State* v. *Monte,* supra, the court herein did not refuse to give a warranted instruction on lesser included offenses. The instruction in no way precluded the jury from considering the lesser included offenses. Therefore, the defendant was not prejudiced.

Even assuming that the court had instructed as the defendant requested, allowing the jury to proceed to a lesser included offense without first having unanimously found the defendant not guilty of the greater, the result would not have been different. If we assume as we must, that the jury followed the court's instructions, the jury would have gone no further once they unanimously agreed that the defendant was guilty of manslaughter in the first degree. That unanimous determination precludes the jury from proceeding to any lesser included offenses.

The majority indicates that the acquittal first instruction required the jury to overcome a preliminary hurdle, a unanimous acquittal on manslaughter in the first degree. I cannot agree that the defendant was deprived of his right to have the jury consider this lesser included offense. The majority would have us speculate that *first* the jury could not unanimously find the defendant not guilty of manslaughter in the first degree and *then* proceed to unanimously find him guilty of that charge. Procedurally this does not comport with the jury instruction which requires the jury to first determine whether the state has proven each and every element

as charged beyond a reasonable doubt so as to allow a unanimous guilty verdict.

I do not agree that we are free to adopt a new requirement of reasonable efforts when requested by the defendant as the mandated jury instruction. In any event the defendant was not harmed, even assuming an improper charge.

Accordingly, I dissent from the decision of the majority and now address the defendant's other claim.

The defendant claims that the statute under which he was convicted of manslaughter in the first degree, General Statutes § 53a-55 (a) (3), is unconstitutionally vague as applied in this case because the elements that distinguish the degrees of manslaughter were not defined meaningfully by the legislature, and the trial court did not adequately distinguish between manslaughter in the first and second degrees. The defendant claims that no actual distinction exists between simple reckless conduct, as proscribed by General Statutes § 53a-56, and reckless conduct aggravated by "extreme indifference to human life" as proscribed by § 53a-55 (a) (3).

The defendant acknowledges that this claim was not preserved at the trial court. The defendant seeks review under *Evans/Golding*,[2] claiming that he was deprived of a fundamental constitutional right, and he also seeks review as plain error under Practice Book § 4185.[3] The defendant's failure to raise the constitutionality of

---

[2] *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

[3] Practice Book § 4185 provides: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel

§ 53a-55 (a) (3) at trial, or object to the instruction given, leaves the record inadequate for a fair consideration of whether the statute was unconstitutionally vague as applied to him. *State* v. *Santiago,* 218 Conn. 483, 485, 590 A.2d 434 (1991). Absent such a record, review is precluded. *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989).

As part of this claim the defendant alleges that the jury was not instructed properly on the distinction between the two degrees of manslaughter. In the absence of a properly preserved claim, "reversal is warranted only if the charge failed to provide the jury with the essential elements of the offense on which the conviction rests or the case must invoke plain error requiring such result in the interests of justice." *State* v. *Woods,* 23 Conn. App. 615, 623, 583 A.2d 639 (1990). The defendant acknowledges that the essential elements of each lesser included offense were properly given. "[W]here the defendant fails to object to an instruction, 'the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial; *State* v. *Cosby,* [6 Conn. App. 164, 172, 504 A.2d 1071 (1986)]; is seriously undercut. See also *State* v. *Kurvin,* [186 Conn. 555, 567, 442 A.2d 1327 (1982)].' *State* v. *Huff,* 10 Conn. App. 330, 338, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987)." *State* v. *Callahan,* 21 Conn. App. 654, 660–61, 575 A.2d 704, cert. denied, 216 Conn. 803, 577 A.2d 716 (1990). Review of the claim on this basis is unwarranted.

The defendant's claim is also unreviewable as plain error under Practice Book § 4185. Plain error review

has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

" 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *King,* 216 Conn. 585, 591, 583 A.2d 896 (1990). The claimed error here is not so egregious or obvious as to merit such review. *State* v. *Gagnon,* 18 Conn. App. 694, 712, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989).

Accordingly, I would affirm the judgment of conviction.

CRETELLA, J., dissenting separately. I agree with the dissent authored by Judge Foti but want to add some additional comments. I cannot agree with the majority's decision to reverse the defendant's conviction and remand the matter for a new trial.

The defendant, who testified at trial in his own behalf, stated that he put a loaded gun to the head of the deceased but that it went off accidently and he had no intent to kill the victim. The jury accepted the defendant's testimony as to lack of intent and unanimously found the defendant not guilty of murder. It also unanimously convicted the defendant of the lesser included offense of manslaughter in the first degree.

The defendant was entirely successful in avoiding a conviction of murder in the first degree, which was his obvious goal. He nevertheless argues on appeal that, but for the unanimity instruction, he might have been even more successful by also avoiding a conviction of manslaughter in the first degree, and might have been convicted of only manslaughter in the second degree. He urges this court to overlook the fact that the same twelve jurors who unanimously found him not guilty of murder, unanimously found him guilty of manslaughter in the first degree. The note from the jury, which is quoted in Judge Foti's dissent, not only raised the

unanimity question but also stated that the jury had unanimously agreed that the defendant was going to be found guilty of either murder or manslaughter in the first degree. A conviction of manslaughter in the second degree was not under consideration. The defendant would have us believe, however, that by getting his requested instructions, the unanimous decision that the defendant was guilty of either murder or manslaughter in the first degree would miraculously change to a consideration of manslaughter in the second degree. He asks this court to utilize pure speculation, conjecture and surmise that he might have been even more successful. Such speculation cannot be allowed to play a part in the judicial process, and I will not engage in it. I cannot conclude that the defendant was in any way prejudiced by the court's instructions.

The majority, in reversing this conviction, also seeks to change the standard and acceptable procedure for instructing the jury on a lesser included offense by adopting the law as established by the United States Court of Appeals for the Second Circuit which states that either the acquittal first charge or the best efforts charge is legally acceptable, but where the defendant opts for one or the other, the court is obligated to comply with that request. *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978).

The majority contends that *State* v. *Stankowski,* 184 Conn. 121, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), contains only dictum on the issue of unanimity of verdicts because that was not an issue in *Stankowski.* I disagree. Dicta is defined as "expressions in an opinion of the court which are not necessary to support the decision." Ballentine's Law Dictionary (3d Ed.). The primary issue in *Stankowski* was the legality of the Chip Smith

charge.[1] Essential to the *Stankowski* holding on that issue, however, was the inability of the jury to agree unanimously. Had there been a unanimous agreement on a verdict of guilty or not guilty, the issue of the Chip Smith charge would not have arisen. A Chip Smith instruction seeks to have the jury reach a unanimous verdict and concerns the issue of unanimity. *Stankowski* concerned the same issue as this case, namely, whether unanimity must be achieved as to a guilty or not guilty verdict. The Chip Smith charge was given in *Stankowski* in an effort to help the jury achieve unanimity whether that unanimity involved a guilty or not guilty verdict.

In *State* v. *Stankowski,* supra, the jury note was identical to the one here. The trial court responded affirmatively to the jury question, and the Supreme Court took no issue with that response. Id., 141–48. In fact, in ruling on the appropriateness of the Chip Smith instruction, our Supreme Court stated that " '[t]he possibility of disagreement by the jury is implicit in the requirement of a *unanimous* verdict and is part of the constitutional safeguard of trial by jury. . . . While a defendant is not entitled to an instruction that a jury may hang' . . . he is entitled to a jury unfettered by an order to decide.' " (Citations omitted; emphasis added.) Id., 147. I conclude that the issue in *Stankowski* embraced the issue to be decided in this case and that the statements in *Stankowski* as to unanimity of verdicts was essential to its holding and that, therefore, these statements are not dicta.

The majority would allow the jury to receive instructions that they may hang on the greater charge and then move on to the lesser included charge. This con-

---

[1] This charge, which is designed to prevent a hung jury by encouraging jurors to attempt to reach a unanimous verdict, was first discussed in *State* v. *Smith,* 49 Conn. 376 (1881).

clusion ignores the requirement that a verdict, be it guilty or not guilty, must be unanimous, which I believe is and always has been the law of this state. Id. As an intermediate appellate court, we are bound to follow that law. *State* v. *Thurman,* 10 Conn. App. 302, 309 n.5, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

Allowing the jury to move on to consider a lesser included charge without having unanimously made a finding of not guilty on the greater charge opens the door to numerous unresolved questions for our trial bench. For example, at the conclusion of the trial, the trial judge directs the jurors to the attention of the clerk who first inquires of them as to their finding on the greater charge by asking the jurors whether they find the defendant guilty or not guilty of the greater charge. What response would be forthcoming from the jurors if they in fact had moved on to the lesser charge because they were hung on the greater? They certainly would not be permitted to respond not guilty if in fact that had not been their unanimous verdict. They would have to respond that they were unable to agree. If that were the response, should a mistrial be ordered? Could the defendant be subjected to a new trial on the greater charge?

It is not for this court to change what I believe to be the pronouncement of the Supreme Court on this question. If our Supreme Court were to change the law to allow a defendant to opt for either a unanimity or reasonable efforts charge, that change would probably not be adopted without clear guidance to the trial bench as to both its initial jury instructions and the procedures for taking the verdict.

For all of the above reasons, I cannot agree with the majority and would affirm the conviction.