70 F.3d 1273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jersharo V. AMEY, Defendant-Appellant.
 No. 94-6325.
 United States Court of Appeals, Sixth Circuit.
 Nov. 20, 1995.
 
 Before: LIVELY, MARTIN, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Jersharo Amey, was convicted of second degree murder and was sentenced to 293 months in prison and five years on supervised release. Additionally, he was ordered to pay a $50 special assessment and to make restitution to the family of the victim in the amount of $4,841.51. On appeal, Amey challenges the introduction of oral statements made to law enforcement officers, the admission of alleged threats made by him concerning the victim, the admission of autopsy photographs of the victim, the refusal to give a requested jury instruction, the determination of the appropriate guideline sentencing offense level, and the denial of a downward departure in his sentence based upon the victim's conduct. We find no reversible error and affirm the district court's judgment.
 
 I. BACKGROUND
 
 2
 In December 1993, approximately one month prior to his marriage to his wife, Ebony Ortega, the defendant began a physical relationship with Jennifer O'Neal. By the end of that month, however, Amey considered the relationship over and attempted to avoid the persistent requests of O'Neal that he remain with her. O'Neal, nevertheless, continued to pursue Amey and, on the evening of February 4, 1994, confronted the defendant with the news that she was pregnant with Amey's child. They discussed the matter in the presence of friends until O'Neal became loud and threatened to tell the defendant's wife and mother of her pregnancy if Amey discontinued his relationship with her. At that point, the defendant walked back toward his car and was heard to exclaim, "I'll kill that bitch." The individuals who testified that they heard the comment claimed, however, that no one present at the time took the statement seriously.
 
 
 3
 Amey and his companions then drove away from the scene, only to have O'Neal and her friends follow them and attempt to force them off the road. Eventually, the defendant returned to his downstairs apartment in the home of his friend, Derek Akins, and went to bed. A few hours later, O'Neal called Amey and asked if she could come to his residence and discuss matters with him further. The defendant consented and O'Neal was driven to the Akins home by Richard Williams at approximately 5:00 a.m. When O'Neal again began shouting and screaming, Derek Akins's mother called Amey and told him to "be quiet or leave."
 
 
 4
 Amey and O'Neal did leave the Akins's home, but the argument resumed in the defendant's vehicle as the couple drove through the town of Radcliff, Kentucky. In his later statement to law enforcement agents, Amey said that O'Neal began hitting him as he drove, demanding that they remain together and claiming that she could not live without him. Eventually, the defendant said, he stopped the car on the Ft. Knox military reservation on a deserted, restricted-access road that was not open to the general public. At that time, claimed Amey, O'Neal exited the vehicle and proposed to walk home. The defendant said that when he attempted to reason with her, O'Neal swung a knife at him. According to the defendant, he grabbed the weapon and threw it into nearby bushes, but O'Neal returned to the car and retrieved a gun that Amey kept there. In an ensuing struggle, the defendant said, he wrested control of the firearm from O'Neal and, while the woman was falling to the ground, cocked the gun and fired once at the back of her head, believing that if he didn't shoot her, she would shoot him if she ever regained possession of the weapon. Amey then dragged O'Neal's body behind a tree, left the scene, and went to the home of his friend, Ray Hughes, where he told Hughes the events of the morning.
 
 
 5
 Hughes's testimony concerning the conversation differed in significant ways however, from Amey's later version of what transpired on the Ft. Knox reservation. According to Hughes, Amey said that when O'Neal saw him with the pistol, she began apologizing for her actions. The defendant, nevertheless, was unmoved and told the victim only that "he's sad that she didn't get to make peace with her family before she died because her [sic] and [her sister] had been fighting." Amey told Hughes that he then shot O'Neal in the head, after intentionally chambering a round of ammunition, and eventually dragged her body behind a nearby tree. Initially, Hughes did not believe that Amey could perform such an act. To prove his point, however, Amey drove Hughes to the site of the crime and showed him O'Neal's lifeless body. When Hughes later questioned Amey regarding his plans if the police should question him about the murder, the defendant informed Hughes that he would simply blame the killing on Richard Williams, the individual who had driven O'Neal to Amey's home earlier that morning, or on Hughes himself.
 
 
 6
 In the days and weeks after the shooting, Amey continued to deny knowledge of O'Neal's fate. Sometime after the killing, the defendant even traveled to O'Neal's sister's home and inquired whether the sister had seen Jennifer recently. Even after the victim's family filed a missing person's report with the police and the law enforcement officials questioned Amey on February 24, 1994, about her disappearance, the defendant maintained that he had argued with O'Neal and dropped her off near an establishment close to her home in the early morning hours of February 5, 1994.
 
 
 7
 In late February 1994, Amey was arrested and detained on an unrelated auto theft charge. Because he was also known to be one of the last persons to have seen O'Neal before her disappearance, he was questioned again on February 26 about his knowledge of her whereabouts. At that time, the defendant continued to maintain that he had not seen O'Neal since he dropped her off near her home after midnight on February 5 and observed her walking down the street toward a restaurant.
 
 
 8
 On February 27, however, Ray Hughes finally decided to inform the police of the knowledge he had regarding O'Neal's disappearance. He led police to the body of the victim on the Ft. Knox reservation and related to them the account of the shooting given him by Amey. Following receipt of that information, the police charged Amey with the first degree murder of Jennifer O'Neal. During further questioning, Amey finally admitted shooting O'Neal, but claimed to have done so only in self-defense or with provocation after struggling with her to remove both a knife and a gun from her possession.
 
 
 9
 Prior to trial, Amey moved to suppress the statements given by him to law enforcement officials on February 26 and February 28, on the grounds that he had previously invoked his constitutional right to silence and that police officers and FBI agents had failed to respect that invocation. After conducting a hearing on the motion, the district court ruled that the defendant failed to make a clear request for cessation of questioning and that even if such a request had been made, interrogation was properly resumed in accordance with the requirements of relevant Supreme Court law.
 
 
 10
 Amey was then tried before a jury and acquitted of first degree murder. The jury concluded, however, that the defendant was guilty of second degree murder and convicted him of that offense. In sentencing Amey, the district court determined that the relevant offense level should be increased two points to reflect the defendant's obstruction of justice in providing false statements to the authorities. After denying Amey's requests for reductions in the sentence, the court then imposed a 293-month term of imprisonment upon the defendant.
 
 II. ANALYSIS
 Suppression of Oral Statements
 
 11
 Amey contends that the district court erred in refusing to suppress two oral statements given to law enforcement officials allegedly after the defendant invoked his constitutional right to silence during a custodial interrogation. He insists that the first such expression of his desire to end questioning on the subject occurred on February 26, 1994, after Officer Craig and Lieutenant Bailey of the Radcliff Police Department had questioned him about his possession of a stolen vehicle and briefly about O'Neal's disappearance. In the face of continued interrogation concerning O'Neal, Amey claims to have told the officers that any information he had to relate was contained in the statement he had already given. Nevertheless, further interviews with the defendant to discuss the disappearance and murder were conducted by Detective Ponder approximately one hour later and by the FBI two days after the alleged request to cease questioning.
 
 
 12
 The district court concluded, however, that Amey had never clearly invoked his right to maintain his silence in the face of questioning involving the disappearance of Jennifer O'Neal. When reviewing determinations involving suppression questions, this court reviews a district court's factual findings for clear error and the district court's application of the law to the facts de novo. United States v. Thomas, 11 F.3d 620, 627 (6th Cir.1993) cert. denied, 114 S.Ct. 1570 (1994).
 
 
 13
 The district court did not interpret Amey's response that "I just said what I had to say in the statement" as an unequivocal invocation of his right to remain silent. That factual finding, in light of additional evidence adduced at the suppression hearing, is not clearly erroneous. Not only is the defendant's statement to the investigators susceptible to an interpretation that does not implicate an assertion of a desire to conclude questioning, but prosecution witnesses testified that Amey did not invoke his right to remain silent and appeared perfectly willing to continue talking with them. We find no error in the district court's denial of the motion to dismiss.
 
 Evidence of Threats by Amey Against O'Neal
 
 14
 In another issue on appeal, the defendant insists that the district court erred in allowing two witnesses to testify that they heard Amey exclaim after an altercation with the victim, "I'll kill that bitch." According to the defendant, such statements constitute commission of the Kentucky crime of terroristic threatening.[1] Consequently, Amey argues, admission of evidence of such "other crimes" requires compliance with the notice provisions of Fed.R.Evid. 404(b) prior to introduction of the testimony.
 
 
 15
 Contrary to Amey's assertion, however, the evidence of the threatening statements made by the defendant is not evidence of "other" crimes. Instead, the testimony was offered to establish an essential element of the very crime with which Amey was charged. Pursuant to the provisions of 18 U.S.C. Sec. 1111(a), the government must, in order to prove first degree murder, establish that the killing of a human being was "willful, deliberate, malicious, and premeditated." Testimony that the defendant harbored thoughts of killing the victim hours before the actual murder provides an important plank in the construction of a case of premeditated murder against Amey. Under such circumstances, the district court did not err in admitting the challenged evidence.
 
 Admission of Photographic Evidence
 
 16
 Amey also insists that the district court erred in admitting into evidence four graphic photographs depicting the injuries suffered by Jennifer O'Neal. According to the defendant's argument, the photographs showing autopsy depictions of the path of the fatal gunshot through the victim's skull and the abrasions received from being dragged along the ground after her death are more prejudicial than probative because the same facts could have been elicited through the use of charts and diagrams, rather than though the admittedly gruesome color photographs.
 
 
 17
 This court reviews the admission of evidence challenged as prejudicial for an abuse of discretion, in the light most favorable to the proponent of the evidence. United States v. Bonds, 12 F.3d 540, 574 (6th Cir.1993). Moreover, as noted in Bonds, "[i]n looking at the disputed evidence, we must 'maximize its probative value and minimize its prejudicial effect'; we cannot reverse the district court's admission merely because we might have excluded the evidence if faced with the decision at trial." Id., citing United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1988), and United States v. Zipkin, 729 F.2d 384, 389-90 (6th Cir.1984).
 
 
 18
 Without question, the challenged photographs at issue in this appeal are relevant to the dispute before the jury. The autopsy photos of the victim's skull, although explicit, do demonstrate clearly the entrance wound, exit wound, and path of the fatal gunshot to the back of O'Neal's head. The photograph of the victim's backside highlights scrapes and abrasions consistent with the theory that the body was dragged along the ground after the shooting.
 
 
 19
 Furthermore, the actual presentation of the evidence at trial was accomplished in such a manner as to inform the jury that the disfigurement of the victim's body was due in part to the autopsy procedures, and in part to decomposition and to rodent mutilation. The lack of undue prejudice suffered by the defendant from the introduction of the allegedly inflammatory photographs is borne out by the additional fact that the jury, charged with the elements of first degree murder, chose to acquit Amey of that offense and convict him of the lesser included offense of second degree murder. Thus, when viewed in the deferential light required by circuit precedent, the evidentiary decision reached by the district court in this case should not be considered an abuse of that court's discretion.
 
 Denial of Requested Jury Instructions
 
 20
 Amey contends that the district court erred in refusing to charge the jury in accordance with his requested "reasonable efforts" instruction on the consideration of lesser included offenses. Instead, the district court charged the jury, in pertinent part, as follows:
 
 
 21
 So, in this case, with regard to the charge of murder in the first degree, if you should find the defendant "not guilty" of that crime as defined in these instructions, you should then proceed to decide whether the defendant is guilty or not guilty of the lesser included offense of murder in the second degree.
 
 
 22
 If you should find the defendant "not guilty" of the crime of murder in the second degree, you should then proceed to decide whether the defendant is guilty or not guilty of the lesser included offense of voluntary manslaughter.
 
 
 23
 (Emphasis added.)
 
 
 24
 Amey requested, as an alternative, that the district court instruct jurors that they could consider lesser included offenses if, after reasonable efforts, they could not agree on a verdict on the greater offense. As authority for this alternative instruction, the defense cited the Second Circuit's opinion in United States v. Tsanas, 572 F.2d 340 (2d Cir.), cert. denied, 435 U.S. 995 (1978), and cases from three other circuits that have followed Tsanas.[2]
 
 
 25
 Generally, this court reviews jury instructions as a whole to determine whether they fairly and fully explain the issues and the applicable law to the jury. United States v. Newcomb, 6 F.3d 1129, 1132 (6th Cir.1993). Thus, a district judge does not err in refusing to charge the jury in accordance with a special request "so long as the instruction given is accurate and sufficient." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984), cert. denied, 472 U.S. 1029 (1985). The refusal to give a requested jury instruction constitutes reversible error only if that request "is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." United States v. Williams, 952 F.2d 1504, 1512 (6th Cir.1991).
 
 
 26
 We note, first, that the defendant's requested "reasonable efforts" instruction, if given in this case, would not have constituted error. See, e.g., United States v. Tsanas, 572 F.2d at 346 ("we cannot say either form of instruction is wrong as a matter of law"); Sixth Circuit District Judges Association, Pattern Criminal Jury Instructions Sec. 8.07, Committee Commentary (1991 ed.) ("[t]he Committee takes no position on which approach should be used"). However, given what even Tsanas recognizes to be the speculative advantages to be gained by a defendant from a "reasonable efforts" instruction, we conclude that the failure to give that instruction also cannot be held to constitute error. We thus decline to reverse the conviction on this basis.
 
 
 27
 Application of Obstruction of Justice Guideline
 
 
 28
 Amey also raises three sentencing issues on appeal, the first of which challenges the propriety of the district court's two-level increase in the offense level for obstructing justice. This court reviews de novo the issue of whether the defendant's conduct constitutes an obstruction of justice because that determination "turns primarily on the legal interpretation of a guideline term." United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991). "However, the question of whether conduct is material and willful under USSG Sec. 3C1.1 is largely factual and may be subject to a clearly erroneous review." United States v. Garcia, 20 F.3d 670, 675 (6th Cir.1994) cert. denied, 115 S.Ct. 1120 (1995).
 
 
 29
 The provisions of Sec. 3C1.1 state, "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." At the sentencing hearing, the district court ruled that Amey had indeed willfully obstructed the administration of justice in this case. In support of its conclusion, the court stated:
 
 
 30
 I think that he provided a materially false statement that significantly impeded the investigation, and also we have something that counsel has not commented on, and that is concealing evidence here. We have the defendant hiding or removing the body of the victim after the shooting to a more concealed location and ridding himself of the gun. I think all of those are evidence of the willful obstruction or impediment--or attempt. It doesn't need to be a successful impediment. It needs to be only attempted or an attempt to impede the administration of justice during the investigation.
 
 
 31
 Indeed, had not Ray Hughes fortuitously decided to reveal his knowledge of the crime to the police three weeks after it was committed, the subterfuge propounded by the defendant could have continued indefinitely. Because, prior to Hughes's revelation to the authorities, the police still had no clear-cut leads in the O'Neal case, we conclude that the district court did not err in finding that Amey's false statements significantly impeded, or at least were attempts to impede, the investigation into the crime. The two-level sentence enhancement in this case for obstruction of justice based upon Amey's lack of candor in his statements to the authorities was, therefore, proper.
 
 
 32
 Denial of Acceptance of Responsibility Sentence Reduction
 
 
 33
 The defendant next insists that he eventually confessed to his complicity in the death of O'Neal and, consequently, should have been granted a two-level reduction in his sentence for acceptance of criminal responsibility. This contention is without merit.
 
 
 34
 This court reviews a district court's refusal to adjust a sentence for acceptance of responsibility for clear error. United States v. Zimmer, 14 F.3d 286, 289 (6th Cir.1994). "Whether a defendant has accepted responsibility for the criminal conduct is a question of fact, and the district court's assessment of this is accorded great deference...." United States v. Williams, 940 F.2d 176, 181 (6th Cir.) cert. denied, 502 U.S. 1016 (1991).
 
 
 35
 The district court determined at the sentencing hearing that Amey had not sufficiently accepted responsibility so as to justify a sentence reduction. As stated by the sentencing judge, "I think that the defendant did not truthfully admit all of the conduct. He admitted the shooting, but as the prosecutor has pointed out, attempted to rely on a heat-of-passion or self-defense argument...." The sentencing guidelines themselves provide that the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." USSG Sec. 3E1.1, comment. (n. 2). Amey forced the prosecution in this case to prove every element of the defendant's guilt. Moreover, even in his final statement to the police, Amey did not provide the malicious details of the shooting that he had earlier related to an acquaintance who later testified at trial for the prosecution. Under such circumstances, the district court did not clearly err in denying an acceptance of responsibility adjustment to the defendant.
 
 
 36
 Denial of Sentence Reduction for Victim's Conduct
 
 
 37
 Finally, Amey submits that the district court erred in denying a sentence reduction pursuant to USSG Sec. 5K2.10 because wrongful conduct of the victim "contributed significantly to provoking the offense behavior." The refusal of a sentencing court to depart downward from the applicable guideline range is not, however, cognizable on appeal if the sentencing range is properly computed, the court was aware of its discretion to depart from the guidelines, and the sentence is not imposed in violation of the law or as a result of an incorrect application of the guidelines. United States v. Hamilton, 949 F.2d 190, 192-93 (6th Cir.1991).
 
 
 38
 In this appeal, Amey does not contend that any error in sentence computation occurred, that the sentence was imposed in violation of the law or guidelines, or even that the district court was unaware of its discretion to depart downward in its sentence calculation. Instead, the defendant argues only that the district court should have exercised its discretion in such a way as to reduce the sentence ultimately imposed, a contention that is not subject to review on appeal.
 
 III. CONCLUSION
 
 39
 For the reasons set out above, we AFFIRM the judgment of the district court in all respects.
 
 
 
 [1]
 Pursuant to K.R.S. Sec. 508.080(1)(a), "[a] person is guilty of terroristic threatening when ... [h]e threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person."
 
 
 [2]
 See United States v. Jackson, 726 F.2d 1466, 1469-70 (9th Cir.1984); Catches v. United States, 582 F.2d 453, 459 (8th Cir.1978); Jones v. United States, 620 A.2d 249, 252 (D.C.App.1993)